## LUTON v. PULLAR.

### Patent Appeal No. 3836.

Court of Customs and Patent Appeals.

Dec. 6, 1937.

918

Elmer Stewart, of Washington, D. C., for appellant.

Lee J. Gary, of Chicago, Ill. (Charles M. Thomas and Clarence O. McKay, both of Washington, D. C., of counsel), for appellee.

Before GRAHAM, Presiding Judge, and BLAND, HATFIELD, GARRETT, and LENROOT, Associate Judges.

HATFIELD, Associate Judge.

This is an appeal from the decision of the Board of Appeals of the United States Patent Office reversing the decision of the Examiner of Interferences, and awarding priority of invention of the subject-matter in issue to appellee.

The interference is between appellant's application No. 535,573, filed May 6, 1931, and appellee's application No. 537,489, filed May 14, 1931.

Appellant is the senior party; having filed his application eight days prior to appellee's filing.

The invention in issue relates to a process of surfacing roads, and, as defined in the counts in issue, Nos. 1 to 5, inclusive, consists in applying a liquid asphaltic oil to the sub-base of a road, placing thereon a layer of "aggregate," crushed stone, gravel, or other suitable material, mixing the oil with the "aggregate," and then spreading thereon a layer of bituminous material, powdered asphalt, at normal temperatures and causing the bituminous material to absorb the oil in order to form a homogeneous plastic binder.

Count 3, which we think, as did the tribunals of the Patent Office, is illustrative of the appealed counts, reads: "3. The process of surfacing roads which consists in coating the sub-base of the road with a liquid asphaltic oil, applying a layer of aggregate thereon, covering the road with a layer of comminuted solid bituminous material at normal temperatures and causing the oil to be absorbed outwardly toward the surface of the layer of material."

The sole issue in the case is that of originality.

Each of the parties claims that he disclosed the invention in issue to the other. Each denies the claim of the other, and there is no direct corroborating evidence of record to support the claim of either.

The invention was reduced to practice on October 9 and 10, 1930, long prior to the filing of the involved applications, and each of the parties claims the benefit of that reduction to practice to the exclusion of the other.

During the period of time with which we are concerned in this interference, March, 1929, to October 10, 1930, appellant (who at the time of the taking of the testimony in this case was vice president of the Lincoln Oil Refining Company of Robinson, Ill., hereinafter referred to as the Lincoln Company) was general superintendent of that company and in charge of manufacturing operations, and appellee (who at the time of the taking of the testimony in this case was "general manager, American Mexican Petroleum Corporation") was secretary of the James B. Berry's Sons Company, Chicago, Ill. (hereinafter referred to as the Berry Company), marketers of petroleum products which it purchased from various refining companies, including the Lincoln Company.

It appears from the record that, since 1907, appellee, a chemical engineer, has been associated with various companies in the production and sale of asphaltic products for use on roads and for other purposes; that he acted as technical expert and consulting engineer for those companies, as well as for the Michigan State Highway Department and various cities in Michigan and Ohio, and was familiar with the use of asphaltic materials for use on roads, not only as a salesman, but as one expert in that field; that he went with the Berry Company (frequently referred to as the exclusive sales agent for the Lincoln Company) in 1926; that from 1929 to October, 1930, and for some time thereafter, the Berry Company purchased asphaltic materials, including road oil, from the Lincoln Company, and sold such materials to the Indiana State Highway Department and to the roofing trade; and that, from the time appellee went with the Berry Company until October, 1930, he had access to, and frequently visited, the Lincoln Company's refinery.

Appellant and appellee, although representing different companies, were mutually interested in the asphaltic materials produced by the Lincoln Company, because the better the materials produced, the easier it was to dispose of them to the trade.

Appellant, as general superintendent of the Lincoln Company and in charge of manufacturing operations, was, of course, familiar with the products sold by his company to the Berry Company, and undoubtedly understood the uses to which they were put. Appellant testified, however, that he had had no experience in the building or maintenance of roads.

With these preliminary observations, we may now turn to the claimed activities of the parties relative to the conception and reduction to practice of the involved invention.

It is claimed by appellant that he conceived the invention on or about March 1, 1929. Relative to his conception, he said: "It was conceived on or about March 1st, 1929 in the laboratory of the Lincoln Oil Refining Company. At this time, we were conducting experiments mixing gilsonite with flux oils in order to get a material that would have certain qualifications and be satisfactory for meeting specifications of states, both Indiana and Illinois. It was at this time, while watching Mr. Lloyd mix gilsonite with flux oils that I conceived the idea of *using powdered gilsonite or a powdered bituminous material* in conjunction with oiled roads to absorb excess oil that might be on the surface of the road. This was occasioned by the fact that Mr. Lloyd, in order to hasten the mixing action, had finely powdered the portion of the gilsonite to be added to the flux oil." (Italics ours.)

Appellant testified that he immediately disclosed the invention to Mr. T. W. Culmer, at that time chief chemist for the Lincoln Company, and asked him for his opinion as to the results that might be obtained by "coating an oiled road with finely divided or pulverized *gilsonite*"; that a few days later Mr. Culmer reported to him that the "idea had merit and was apparently satisfactory," but that "the use of gilsonite would be limited, if not absolutely prohibited by its excessive costs." (Italics ours.)

On cross-examination appellant stated that it was during the time the experiments were being made by Mr. Lloyd that he conceived the invention in issue, and that he did not recall that he observed Mr. Lloyd's experiments for any particular length of time. When asked what there was about those experiments that caused him to conceive the invention, appellant stated: "Just merely the fact that seeing the *powdered asphalt* [gilsonite] added to the liquid asphalt and oil, brought to my mind possibly for no reason whatsoever, other than it just happened, brought to my mind the thought that *it* could be used in the absorption of road oil, which is liquid asphalt." (Italics ours.)

Obviously, appellant had in mind the use of powdered gilsonite, which, according to the testimony of his own witnesses, could not be used in road construction to absorb road oil at normal temperatures.

Appellant further stated that he had never made any experiments with "powdered asphalt" capable of dissolving road oil at normal temperatures prior to his claimed reduction to practice of the involved invention, October 9 and 10, 1930; that on or about September 1, 1930, he disclosed the invention to appellee; and that such disclosure was made in appellant's office at the Lincoln Company's refinery. We quote from appellant's testimony: "During the period of Mr. Pullar's visit, I discussed with him the matter of using our solid material, more in the line of trying to sell him on the idea so that he would be for the proposition *as a marketer*, stating we had manufactured or produced several tons of *solid pitch*, and that the material was too valuable to use as a waste product and asked him whether it would be possible, through his connections with the Indiana State Highway Department, to get an experimental piece of road put in, *using this material on the oiled surface*." (Italics ours.)

It should be explained at this point that the term "solid pitch" used by appellant in his quoted testimony was undoubtedly intended to refer to the solid bituminous material produced by appellant's company during the first part of September, 1930, by means of a so-called "vacuum flash tower" purchased in the spring, delivered in April or May, and installed some time during the summer of 1930, which material was powdered and later shipped to Jasonville, Ind., where it was used on a road in conformity with the process defined by the appealed counts.

Appellant further stated that appellee, Pullar, advised him that he would immediately get in touch with the Indiana State Highway Department and see what could be done.

Appellant's Exhibits Nos. 4, 6, 7, and 8 are letters from appellee to appellant. They are dated September 27, October 1, October 2, and October 4, 1930, respectively, and, so far as pertinent, read:

"Exhibit No. 4.

"With reference to the *talk which I had with you* regarding putting in an experimental strip of road oil with powdered asphalt.

"We have taken this matter up with Mr. Hinkle and he is agreeable to doing this, and if you *can arrange to pulverize three or four tons we can go ahead with this experiment just as soon as you are ready.* I think it would be well to do this within the next couple of weeks if possible.

"For the experiment, if you so desire, *you can pulverize the hard Holmes-Manley residue which you have on hand, as in my opinion* there would be very little difference between how this would work and a 50-50 blended powdered asphalt would work on the road. *If for any reason this does turn out as good as I hope it will be of very material assistance* in holding our present position in Indiana. (Italics ours.)

"Exhibit No. 6.

"We are just in receipt of letter from Mr. H. C. Offutt, District Engineer, advising that the pulverized asphalt experiment will be made on Road 59 just outside of Jasonville, and they have ordered a 10,000 gallon car of A-60 to be shipped to Jasonville as soon as we are in position to ship the pulverized asphalt. * * *

"In view of the uncertainty of the weather I hope that you will be able to get this pulverized asphalt ready as soon as possible. I think it is of the utmost importance to try and get this work done under as favorable conditions as we can at this time of the year.

"Exhibit No. 7.

"With reference to your letter of October 1 regarding powdered asphalt. Attached find copy of letter I am writing Mr. Offutt, District Engineer.

"I wish you would, therefore, in accordance with this letter ship the approximate 3½ tons of powdered asphalt to the Indiana State Highway Commission, Jasonville, Indiana; notify Mr. Steve Stalcup, Linton, Indiana.

"Exhibit No. 8.

"With further reference to Indiana State Highway experimental road. * * *

"I have advised Mr. Offutt, District Engineer, that we will be ready to put on the experimental job next Thursday, October 9th, and will unload the cars at Petersburg and Tell City Friday and Saturday.

"Please arrange to have the powdered asphalt and car of Road Oil on hand at Jasonville by Thursday. Should there be any change in plans due to Mr. Offutt I will wire you the first thing Monday morning."

Appellant testified that immediately prior to the construction of the experimental piece of road near Jasonville, Ind., he talked with the witness Franke in the presence of the witness Stover, told him of the amount of powdered asphalt the Lincoln Company had on hand, and suggested the various quantities of powder that should be distributed over different sections of the road.

The witness Stover testified that he was not present when the alleged conversation between appellant and the witness Franke took place, but that Mr. Franke was at the Lincoln Company's plant and talked to appellant the day before the experimental road was constructed.

The witness Franke stated that he had no recollection of any conversation with appellant regarding the building of the experimental road.

The witness Irwin W. Lloyd, a chemist employed by the Lincoln Company, testifying for appellant, stated that, in March or April, 1929, he made certain experiments with *powdered gilsonite* and asphaltic oil, and attempted to mix them together in an effort to have the gilsonite absorb the oil; that, in order to accomplish that purpose, it was necessary to heat the oil to a temperature of approximately 300° F.; that he also experimented with a combination of an aggregate (consisting of "mortar sand"), asphaltic oil, and powdered gilsonite, but that there was no apparent action until the oil was heated to a temperature of about 325° F.; and that, after the three ingredients had been sub-

jected to that degree of heat for several hours, there was "a slight appearance that some fluxing had taken place." (The exact quantities of the three ingredients used were not stated, but it appears that they were not large and were heated in pans in an oven, specially designed for the making of tests.) The witness stated that the chief chemist of the Lincoln Company, T. W. Culmer, was present during the making of those experiments. There is nothing in the testimony of the witness to indicate that his experiment in mixing the aggregate, the powdered gilsonite, and the heated oil was a success.

The witness T. W. Culmer, chief chemist of the Lincoln Company, testifying for appellant, stated that appellant had disclosed the invention to him in March, 1929; that his disclosure was, "That instead of heating; we could possibly get a bond by *powdering gilsonite* and applying it to an oil coated material" (italics ours); that it was this disclosure and a request by appellant that experiments be made that resulted in the tests made by the witness Lloyd with *gilsonite,* oil, and an aggregate, hereinbefore set forth; *that, in carrying out the idea of appellant, it was decided that gilsonite was too expensive* (as a matter of fact it appears that gilsonite could not be made to absorb oil readily at normal temperatures, but *that it was necessary to heat the oil to at least 300° F.*); that, because gilsonite was so expensive, an effort was made to secure a powdered asphaltic material for road building more suitable for that purpose; and that a "vacuum tower" was installed at the Lincoln Company's plant, and the solid bituminous material, the powdered asphalt used in reducing the invention to practice, was produced by his company in August, 1930.

There is nothing in the testimony of the witness to indicate that appellant ever mentioned any *material other than gilsonite* for use with an aggregate and oil in road building. On the contrary, he stated positively that appellant's idea was to "employ *powdered gilsonite in cold* on a material which was coated with oil—a thin oil, or a road oil." (Italics ours.)

Appellant's witness N. T. Stover, sales manager of the Lincoln Company, testified that soon after the laboratory experiments made in March and April, 1929, appellant and the witness Culmer explained the experimental work which had been done "with the material which they thought they could make in the plant." He further stated that the new material which had never been produced by the Lincoln Company, but which was contemplated, was for the first time produced by that company in the *spring of 1930* by the use of the "vacuum tower." (It will be recalled that the "vacuum tower" was installed sometime during the summer of 1930, and that, according to the testimony of appellant, the so-called "new material" was not produced until the first part of September of that year.) The witness further stated that the "vacuum tower" was purchased in the late fall or winter of 1929, and that he was testifying entirely from memory. On cross-examination, referring to the disclosure by appellant to him of the involved invention, he said that: "One morning when * * * [they] were together [in the spring of 1929], Mr. Luton said that he had completed some tests in the laboratory which indicated that *we could make a pitch which would have some possibilities* in road materials and perhaps other lines and we talked about an insulation of refrigerators and several other possibilities and explained that he could use up a quantity of this residuum [the heavy residuums resulting from the refining of oil] *at a higher priced material* if the Board of Directors would approve an expenditure to make this in a commercial way and wanted to know what I thought of the possibilities of finding a market for it." (Italics ours.)

It is clear we think, from what has been said, that the only experiments made by appellant or his witnesses Culmer and Lloyd were with *gilsonite* and heated asphaltic oil, and those materials in combination with an aggregate of "mortar sand," and that the experiments with gilsonite, asphaltic oil, and "mortar sand" were not successful, even when the ingredients were heated to a temperature of approximately 325° F.

Each of the tribunals of the Patent Office held, and correctly so we think, that, due to the fact that the counts are limited to a solid bituminous material which will absorb asphaltic oil "at normal temperatures," the *gilsonite* experiments could be considered for no purpose other than that of fixing the date when appellant claims to have conceived the involved invention.

There is nothing in the testimony of the witness Stover that, by any stretch of

the imagination, can be considered as in anyway indicating any disclosure to him by appellant of the involved process.

The witness Lloyd did not testify that the involved invention had ever been disclosed to him by appellant.

The witness Culmer stated, as hereinbefore noted, that the disclosure to him by appellant was the possible application *of gilsonite* to an oiled road in the absence of heat.

From a careful consideration of the testimony of appellant and his witnesses, we think the observation may be fairly made that there is nothing in that testimony to indicate that either appellant or his witnesses had any conception of any solid bituminous material that would absorb oil at normal temperatures in March or April, 1929, or at any time thereafter prior to September, 1930, when such a material was produced by the Lincoln Company. Indeed, there is nothing in *their testimony* to indicate that, at that time or at any time prior to the construction of the experimental road, they were aware of the fact that the solid bituminous material produced by the Lincoln Company in September, 1930, would absorb oil at normal temperatures.

That appellant, in March, 1929, when he claims to have disclosed the invention to the witness Culmer, had in mind *gilsonite,* is not open to serious question. How then can it be held that he has established that at any time prior to the construction of the experimental road he had a conception of the invention in issue; that is, a process of "coating the sub-base of * * * [a] road with a liquid asphaltic oil, applying a layer of aggregate thereon, covering the road with a layer of comminuted solid bituminous material at normal temperatures and causing the oil to be absorbed outwardly toward the surface of the layer of material"? It may be that appellant had such a conception in September, 1930, or at some time prior thereto, but, if he had, there is nothing in his testimony or that of his witnesses to establish that fact.

We hold, therefore, that the evidence introduced by appellant is wholly insufficient to establish that he had any conception of the involved invention at any time prior to October, 1930.

The powdered bituminous material produced by the Lincoln Company in September, 1930, was used in the building of an experimental piece of road near Jasonville, Ind., on October 9 and 10, 1930. The road was constructed in conformity with the invention defined in the counts in issue; that is to say, the sub-base of the road was coated with unheated asphaltic oil, an aggregate was spread thereon, and the surface was then covered with comminuted solid bituminous material produced by the Lincoln Company.

It is agreed by counsel for the parties that the construction of the experimental road amounted to a reduction to practice of the involved invention, and the tribunals of the Patent Office so held.

Appellee testified that, in the winter of 1929, he attended an "Asphalt Convention" at French Lick Springs, Ind., and heard two "papers" read on "cold mixes"; that, although he had used powdered asphalt for years prior thereto for other commercial purposes, it was after hearing those "papers" that he became interested in the use of powdered asphalt for "paving purposes"; that, thereafter, during the winter of 1929 and 1930, he did a considerable amount of experimental work with powdered asphalt at his home in Chicago; that it was some time in the early spring of 1930 that he conceived the involved invention; that he disclosed the invention to his assistant Mr. W. J. Franke, and, shortly thereafter, to Mr. A. H. Hinkle (at that time superintendent of maintenance of the Indiana State Highway Commission, whose duty it was to maintain the state highways, which included the resurfacing of roads, which work was carried on under his supervision); that, although he did not recall the exact dates when he disclosed the invention to Franke and Hinkle, he was certain that such disclosures were made in the winter or early spring of 1930, because, he said, it was immediately prior to the time when the Indiana State Highway Department let contracts for the furnishing of oil for use on the roads in that state for that year; that it was the practice of the State Highway Department to let those contracts in the spring of each year; that he was interested as the representative of the Berry Company in supplying oil to the state of Indiana, and, therefore, recalls that, having first disclosed the invention to his assistant Franke, he took the matter up with Mr. Hinkle for the purpose of getting his consent to permit a piece of road to be constructed in ac-

cordance with his invention; that he was thoroughly familiar with the practice of the Indiana State Highway Department; and that it usually took from three to six months to secure its approval for the construction of an experimental piece of road, and the designation of a road for, such purpose.

Appellee further stated that he disclosed the invention to appellant and to the witness Culmer during the summer of 1930, at which time they were considering the advisability of producing a "hard asphalt" for use as a fuel.

It may here be stated that, athough Mr. Culmer testified for appellant, he was not asked whether appellee had disclosed the invention to' him in the summer of 1930, and he did not deny appellee's statement that he had.

The witness William G. Franke testified that in 1930 he was a salesman for the Berry Company, and that appellee was his immediate superior. He stated that he was familiar with the involved invention and that it was disclosed to him by appellee in the "spring or early summer of 1930 * * * possibly May or June." He stated that it was his duty to get a test road put in by the Indiana State Highway Department, and that, therefore, he discussed the matter with the witness Hinkle, who was in charge of the maintenance of roads in that state. He further stated that appellee explained to him the character of a solid bituminous material that would absorb asphaltic oil at normal temperatures. In fixing the time when the invention was disclosed to him by appellee, the witness stated that it was several months prior to the construction of the experimental road; October 9 and 10, 1930.

The witness A. H. Hinkle testified that appellee disclosed the invention to him in the late winter or early spring of 1930; that, although he could not state definitely the exact date, he was positive that it was made to him at a time when he and appellee were discussing the summer. program relative to the oiling and resurfacing of the roads in that state; that their summer programs for such work were arranged in the winter or early spring of each year; and that at that time, probably in March or April, appellee not only disclosed the invention to him, but requested permission "to lay an experimental strip of road" in accordance with his disclosure. He stated that appellee had called on him several times during the summer of 1930, and on each occasion discussed the involved invention and the proposed experimental construction.

The witness H. C. Offutt, who at the time of testifying was a salesman for the Lincoln Company but who in 1930 was district engineer with the Indiana State Highway Department, testifying for appellant, stated that, on or about the 23–25 of September, 1930, when he was in conference with the witness Hinkle and appellee, it was decided to put in an experimental piece of road in accordance with the involved invention; that the witness Hinkle gave him detailed instructions as to how the road should be put in; that there was considerable discussion between appellee and the witness Hinkle as to the amount of powdered asphalt to be used in constructing the road; that appellee suggested that more powdered asphalt be used than Mr. Hinkle thought was necessary; that he (the witness) was told by Mr. Hinkle to use about one-quarter pound per square yard; that he instructed the witness Steve Stalcup (who testified for appellant and who was district engineer in charge of the Linton, Ind., subdistrict) to build the experimental road near Jasonville, Ind., in accordance with the instructions he (Offutt) had received from Mr. Hinkle.

The witness Steve Stalcup testified that the experimental road was constructed under his supervision on October 9 and 10, 1930; that he had received instructions from the witness Offutt to use varying quantities of powdered asphalt on different sections of the road so that the correct amount to be used in the future might be determined; that a road of about $3\frac{1}{10}$ miles in length was constructed in accordance with the involved invention; that appellee and the witness Franke were present on October 9th, when the road was started and remained until about one-half mile was completed; that Franke was present on October 10th, but that appellee was not; that he discussed with appellee the amount of powdered asphalt to be used on the road; that they agreed upon the amount which was used, about one-quarter pound per square yard; and that appellee made suggestions during the construction of the road as to what should be done.

It clearly appears from the record that neither appellant nor any other represen-

tative of the Lincoln Company was present during the construction of the road; that the road was a success; that the powdered asphalt, about 3½ tons, was furnished by the Lincoln Company; and that the state of Indiana furnished the oil, the equipment, and the labor necessary to do the work.

After the work of constructing the road was completed, appellee wrote to appellant, under date of October 14, 1930, as follows:

"We put in the experimental road using the powdered asphalt last Thursday and Friday, and I am very pleased to inform you that the results so far obtained have *more than met my most optimistic expectations.* The Indiana State Highway officials also seem to be much pleased, and unless something goes wrong I am inclined to think that this is going to be of material assistance to us in retaining our good standing in Indiana.

"From my experience in working with this powdered asphalt I am, however, inclined to feel that you are going to be obliged to separate the Holmes-Manley tar from the pipe still vacuum flux asphalt, as these two do not seem to mix properly. I will discuss this matter more fully with you the next time I see you.

"The results in Indiana are so encouraging that I would like to try out this powdered asphalt in connection with the treatment of earth roads in Illinois and if you could arrange to supply about an additional ton of material I can arrange to have it tried out on earth road construction this fall, and see how it goes through the winter. If by chance it should prove satisfactory for earth roads it will, of course, open up a large market in Illinois. I believe the possibilities of success are worth the expense and effort involved." (Italics ours.)

On this record, the Examiner of Interferences held that appellant conceived the invention prior to September, 1930, the exact time not being stated; that, so far as appellee's activities were concerned, he was acting as an employee of the Lincoln Company; that appellant disclosed the invention to appellee; and that, therefore, appellant was entitled to an award of priority.

On appeal, the Board of Appeals reversed the decision of the Examiner of Interferences and held that appellee was the first to conceive the invention; that

he was not employed by the Lincoln Company; that the doctrine of employer-employee was not applicable; and that appellee was entitled to an award of priority.

It is argued by counsel for appellant that as appellee's witnesses Hinkle and Franke were testifying solely from memory as to what occurred four years prior thereto, their testimony was wholly insufficient to warrant a holding that appellee had actually disclosed the invention to them during the spring or summer of 1930.

It is true that those witnesses testified without documentary evidence to refresh their memory. However, each fixed the time of appellee's disclosure of the invention to him by the happening of known events, and neither, so far as it appears of record, had the slightest interest in the outcome of this proceeding. Both, of course, might be mistaken as to the time when appellee disclosed the invention to them. We are of opinion, however, considering the character of the witnesses, the apparent frankness with which they gave their testimony, and other circumstances appearing of record, that they are not mistaken, and that appellee disclosed the invention to them in the spring or early summer of 1930.

Appellant's Exhibits Nos. 4, 6, 7, and 8, hereinbefore quoted, would seem to indicate that appellee was advising appellant relative to the bituminous material to be used on the experimental road, and that he was urging that there be no undue delay by appellant's company in supplying such material. There is nothing in those exhibits to indicate that appellant had disclosed the invention to appellee. On the contrary, Exhibit No. 4 tends to indicate, in view of all the facts of record, that it was appellee, not appellant, who had made a disclosure of the invention. In that exhibit appellee referred to the talk he had with appellant and stated that if the experiment proved as successful as *he hoped* it would, their position in Indiana would be improved. Furthermore, the letter from appellee to appellant under date of October 14, 1930, indicates clearly appellee's intense interest in the invention. He there stated that the success of the experimental road "more than met *my* most optimistic expectations." (Italics ours.) Certainly there is nothing in any of those exhibits to suggest that in September and October, 1930, appellee thought that appel-

lant was the inventor of the involved process.

It clearly appears from the record that appellee was not at any time in the employ of either the Lincoln Company or appellant, and that the relationship of the parties was not such as to warrant the application in this case of the "employer-employee doctrine."

We hold, therefore, that appellee is entitled to the benefit of the building of the experimental road near Jasonville, Ind., as a reduction to practice of the involved invention; that he is the first and original inventor of the subject-matter in issue; and that he is entitled to an award of priority.

The decision of the Board of Appeals is affirmed.

Affirmed.